IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
ASHEVILLE DIVISION
CIVIL CASE NO. 1:22-cv-00010-MR-WCM

| | |
|---|---|
| RACHEL K. NATIONS, as *Administratrix of the Estate of* Thresia Darlene Eaton, <br><br> **Plaintiff,** <br><br> vs. <br><br> UNITED STATES OF AMERICA, <br><br> **Defendant.** | **MEMORANDUM OF DECISION AND ORDER** |

**THIS MATTER** is before this Court on Defendant's Partial Motion to Dismiss for Lack of Subject Matter Jurisdiction.[1]  [Doc. 21].

**I.   PROCEDURAL AND FACTUAL BACKGROUND**

On January 13, 2022, Rachel Nations ("Plaintiff"), in her capacity as Administratrix of the Estate of Thresia Eaton, filed this wrongful death medical malpractice action against the United States of America ("Defendant") under the Federal Tort Claims Act ("FTCA"), 28 U.S.C. § 1346. [Doc. 1].  In her Complaint, Plaintiff alleges that Thresia Eaton, her mother, was dropped on her head from a mechanical lift while being moved inside

---

[1] By this motion, Defendant only seeks dismissal of Plaintiff's Second Cause of Action.

her room in the Tsali Care Center (the "Care Center") in Cherokee, North Carolina. [Id. at 1-2]. Plaintiff alleges that as a result of this fall, her mother suffered a fractured skull and ultimately died. [Id. at 2]. Two certified nursing assistants ("CNA"), Amanda Webb ("Webb") and Shaneise Hutchinson ("Hutchinson"), were operating the lift when Ms. Eaton fell.[2] [Id.]. In her first cause of action, Plaintiff generally alleges that Webb and Hutchinson negligently operated the lift. [See id. at 10-15]. In her second cause of action, Plaintiff alleges that the Care Center's administrators and supervisory nursing staff were negligent in various respects. [Id. at 15-20]. Plaintiff specifically alleges as follows:

> 54. Each of the individual members of the EBCI/CIHA and Care Center administration and/or nursing staff, including, but not limited to, the Administrator, Medical Director, Director of Nursing, Staff Development Coordinator, Nurse Educator, Staffing Coordinator/Nurse Scheduler and members of the Care Center's Human Resources staff, owed Thresia Eaton multiple duties of care including, but not limited to a duty to use ordinary care to protect Ms. Eaton

---

[2] Plaintiff's claims are brought against the United States of America because she alleges Webb and Hutchinson were employees of the Cherokee Indian Hospital Authority ("CIHA"). The CIHA was formed pursuant to a Title V Self-Governance Compact between the Eastern Band of Cherokee Indians, a federally recognized tribe, and the United States Department of Health and Human Services. Individuals acting within their scope of employment for the CIHA are deemed to be employees of the Public Health Service for purposes of tort liability. See Lossiah v. United States, No. 1:18-cv-00134-MR-DSC, 2021 WL 244802, at *1 (W.D.N.C. Jan. 25, 2021) (Reidinger, C.J.). As such, the FTCA provides the exclusive remedy for any liability falling within the statute's ambit. See 25 U.S.C. § 5321, *et seq.* For the purpose of considering this motion, however, it need not be determined whether Webb and Hutchinson were employees of the CIHA.

from injury, and/or the duty to exercise that degree of care, skill, and diligence had and exercised by similar skilled health care facilities and their administrators, nurses and other health and medical care providers providing the same kind of services, medical care and health care in similar conditions or under similar circumstances, . . .

55. Each of the individual members of the EBCI/CIHA and Care Center administration and/or nursing staff, also owed Thresia Eaton an additional duty to protect her from the foreseeable negligence and other wrongful conduct of other medical and healthcare professionals or other personnel working at the Care Center on and before January 13, 2020, . . .

56. The members of the administration and/or nursing staff of the EBCI/CIHA and/or Care Center, individually or together, breached the duties and standards of care owed and applicable to the protection, care and treatment of Thresia Eaton as a resident of the Care Center and was thereby negligent, willful, wanton, reckless and/or grossly negligent in the following ways:

    A.    By failing to verify and/or otherwise observe and require Webb and Hutchinson to demonstrate their competency in the use of the facility's mechanical lifts and safe lifting techniques before January 13, 2020 . . . ;

    B.    By failing to adequately orient and train Webb and Hutchinson in the proper use of the Care Center's lifts and safe lifting techniques . . . ;

    C.    By failing to provide facility materials and resources to Webb and Hutchinson in the

3

|      | proper use of the Care Center's lifts and safe lifting techniques . . . ; |
|------|---|
| D.   | By failing to ensure that Webb and Hutchinson knew of, understood and followed the Care Center's procedures for lift transfers and the use of mechanical lifts before January 13, 2020 . . . ; |
| E.   | By failing to verify that Webb and Hutchinson had been properly trained in lifting techniques and the operation and use of mechanical lifts before January 13, 2020 . . . ; |
| F.   | By failing to periodically observe and review and evaluate Webb and Hutchinson for adherence to the facility's policies and procedures and/or applicable law regarding the proper use of the facility's mechanical lifts and safe lifting techniques . . . ; |
| G.   | By delegating and assigning the responsibility of transferring Ms. Eaton using the lift to Webb and Hutchinson on and before January 13, 2020, knowing that neither Webb nor Hutchinson was competent to use the lift or in safe lifting techniques; |
| H.   | By delegating and assigning the responsibility of transferring Ms. Eaton using the lift to Webb and Hutchinson on and before January 13, 2020 without verifying or otherwise knowing in advance whether Webb and Hutchinson were competent in the use of the lift . . . ; |

4

I. By delegating and assigning the responsibility of transferring Ms. Eaton using the lift to Webb and Hutchinson on and before January 13, 2020 knowing in advance that neither Webb nor Hutchinson was competent in the use of the lift . . . ;

J. By failing to monitor and oversee the transfer activities of Webb and Hutchinson while they attempted to transfer Ms. Eaton on and before January 13, 2020 . . . ;

K. By failing to direct and supervise the transfer activities of Webb and Hutchinson while they attempted to transfer Ms. Eaton on and before January 13, 2020 . . . ;

L. By failing to provide adequate supervision to Webb and Hutchinson in the use of the lift to transfer Ms. Eaton . . . ;

M. By failing to provide adequate medical and personal care and maintenance to Ms. Eaton as a resident of the Care Center . . . ;

N. By failing to adequately provide for the safety and wellbeing of Ms. Eaton as a resident of the Care Center . . . ;

O. By failing to ensure that Ms. Eaton as a resident of the Care Center was provided adequate supervision to prevent accidents . . . ;

5

P. By failing to provide a sufficient number of qualified and competent staff who were substantively knowledgeable about Ms. Eaton's specific medical needs and conditions in order to deliver care in an organized, timely and efficient manner to meet needs . . . ;

Q. By failing to act as would a reasonable person under the same or similar circumstances;

R. By retaining Defendants Webb and Hutchinson in their employment when members of the administration and/or nursing staff of the EBCI/CIHA and the Care Center knew or should have known they were not competent to perform their jobs; and/or

S. In such other separate or collective ways as discovery in this action may hereafter reveal.

[Doc. 1 at 15-20].

On August 28, 2023, Defendant moved to dismiss Plaintiff's second cause of action "insofar as it seeks to impose liability on the United States based upon a claim of negligent hiring, training, supervision, or retention" for lack of subject matter jurisdiction. [See Doc. 21 at 1]. Plaintiff filed a Memorandum in Opposition on September 28, 2023, and Defendant filed its Reply on October 12, 2023. [Docs. 34, 37]. Having now been fully briefed, this matter is ripe for disposition.

6

## II. STANDARD OF REVIEW

A motion to dismiss based on Rule 12(b)(1) of the Federal Rules of Civil Procedure addresses whether this Court has subject matter jurisdiction over the dispute at hand.  A challenge to a court's subject matter jurisdiction under Rule 12(b)(1) may be raised as either a facial or factual attack.  See Hutton v. Nat'l Bd. of Exam'rs in Optometry, Inc., 892 F.3d 613, 621 n.7 (4th Cir. 2018).  In a facial attack, in which a defendant contends that a complaint fails to allege facts upon which this Court can base subject matter jurisdiction, the factual allegations in the complaint are taken as true.  Adams v. Bain, 697 F.2d 1213, 1219 (4th Cir. 1982).  If, however, the defendant makes a factual attack by contending that the jurisdictional allegations contained in the complaint are false, this Court may go beyond the allegations in the complaint to determine if the facts support its exercise of jurisdiction.  Id.  The burden of establishing subject matter jurisdiction on a motion to dismiss rests with the party asserting jurisdiction, in this case Plaintiff.  Id.; Williams v. United States, 50 F.3d 299, 304 (4th Cir. 1995).

## III. DISCUSSION

Plaintiff purports to bring her second cause of action pursuant to the FTCA. While the United States is generally immune from suit, see United States v. Testan, 424 U.S. 392 (1976), that immunity is partially abrogated by the FTCA, which provides the exclusive remedy for torts committed by government employees in the scope of their employment. United States v. Smith, 499 U.S. 160, 173 (1991); Maron v. United States, 126 F.3d 317, 321-22 (4th Cir. 1997). Pursuant to the FTCA, the United States can be held liable in tort under circumstances where, if it were a private *individual*, it would be liable to a claimant in accordance with the law of the place where the act or omission occurred. 28 U.S.C. § 1346(b)(1).

This requirement, known as the "private-party analogue," must be met to establish subject matter jurisdiction over a claim brought pursuant to the FTCA. See FDIC v. Meyer, 510 U.S. 471, 477 (1994) (citing 28 U.S.C. § 1346(b)); see also Sanders v. United States, 493 F. Supp. 3d 470, 482-85 (D.S.C. 2020); Sheridan v. United States, 773 F. Supp. 786, 788 (D. Md. 1991) ("Here, 'because no private analog exists,' . . . there can be no FTCA liability."). Because Plaintiff alleges that she was injured in North Carolina, to determine whether this case falls within the jurisdictional ambit of the FTCA, this Court must decide whether North Carolina recognizes the claims of negligent hiring, retention, training, and supervision that Plaintiff appears

to allege in her second cause of action.[3]  Medina v. United States, 259 F.3d 220, 223 (4th Cir. 2001); [see also Doc. 1 at 15-20].

Claims for negligent hiring, retention, training, and supervision are actionable against employers in North Carolina.  See Keith v. Health-Pro Home Care Servs., Inc., 381 N.C. 442, 462, 873 S.E.2d 567, 582 (2022); Smith v. Privette, 128 N.C. App. 490, 494, 495 S.E.2d 395, 398, appeal dismissed, 348 N.C. 284, 501 S.E.2d 913 (1998).  These "claims are not based upon vicarious liability, but rather [are] direct claim[s] against the employer based upon the actionable negligence of the employer[.]"  Little v. Omega Meats I, Inc., 171 N.C. App. 583, 586, 615 S.E.2d 45, 48, aff'd per curiam, 360 N.C. 164, 622 S.E.2d 494 (2005).  These claims are not actionable, however, against co-employees.  See Foster v. Crandell, 181 N.C. App. 152, 171, 638 S.E.2d 526, 539 (2007) ("At most, Crandell was … a co-employee of Rivest.  Consequently, there can be no argument that Crandell negligently employed or retained Rivest."); McFadyen v. Duke

---

[3] In addition to the allegations in Plaintiff's second cause of action that explicitly mention the negligent hiring, training, supervising, and retaining of Webb and Hutchinson, Plaintiff alleges that the Care Center employees referred to therein failed "to provide adequate medical and personal care and maintenance to Ms. Eaton[;]" and failed "to adequately provide for the safety and wellbeing of Ms. Eaton[.]"  [See Doc. 1 at 19-20].  Defendant's Motion does not appear to extend to the portion of the count arising from these allegations, moving only to dismiss that count "insofar as it is based on a claim of negligent hiring, training, supervision or retention."  [Doc. 22 at 14].

9

Univ., 786 F. Supp. 2d 887, 1002 (M.D.N.C. 2011) ("[A] claim for negligent hiring, retention, and supervision would be actionable only against the employer, not the individual supervisors."), aff'd in part, rev'd in part on other grounds sub nom., Evans v. Chalmers, 703 F.3d 636 (4th Cir. 2012); Ostwalt v. Charlotte-Mecklenburg Bd. of Educ., 614 F. Supp. 2d 603, 609 (W.D.N.C. 2008) ("no claim for negligent supervision lies when the Defendant is not the employer of the individual who commits the tortious act.").

This distinction exists because North Carolina's Workers' Compensation Act "provides [the] exclusive remedy for unintentional work-related injuries." Gregory v. Pearson, 224 N.C. App. 580, 583, 736 S.E.2d 577, 580 (2012) (citing N.C. Gen. Stat. § 97-10.1); see also Pleasant v. Johnson, 312 N.C. 710, 713, 239 S.E.2d 244, 247 (1985) ("an employee who recovers under the Workers' Compensation Act cannot raise a negligence claim against a co-employee . . . ."). "The social policy behind workers' compensation is that injured workers should be provided with dignified, efficient and certain benefits for work-related injuries[.]" Pleasant, 312 N.C. at 712, 325 S.E.2d at 246. However, "in exchange for [these] limited but assured benefits[,]" "the employee and his dependents give up their common law right to sue the employer [and co-employees] for negligence . . . ." Id. at 712, 325 S.E.2d at 246-47. This limitation on the liability of an individual

supervisor or co-worker extends to claims by plaintiffs who were not employees injured in the course and scope of their employment. See, e.g., Keller by & through Keller v. Deerfield Episcopal Ret. Cmty., Inc., 271 N.C. App. 618, 628, 845 S.E.2d 156, 163 (2020).

Here, the administrators and supervisory nursing employees who are the subject of Plaintiff's claims for negligent hiring, retention, training, and supervision were, at most,[4] co-employees of Webb and Hutchinson. See Trivette v. Yount, 366 N.C. 303, 309, 735 S.E.2d 306, 310-11 (2012) (a school principal, despite his supervisory role, was the co-employee of a part time office assistant); Regan v. Amerimark Bldg. Prods., Inc., 118 N.C. App. 328, 332, 454 S.E.2d 849, 852 (1995) (a plaintiff's supervisors were his co-employees); McCorkle v. Aeroglide Corp., 115 N.C. App. 651, 653, 446 S.E.2d 145, 147 (1994) ("[P]laintiff's immediate supervisor . . . qualifies as a 'co-employee[.]'"). Accordingly, Plaintiff cannot state a claim for negligent hiring, retention, training, and supervision based upon the actions of these individuals.

Plaintiff contends that her case should not be analyzed under the general framework governing negligent hiring, retention, training, and

---

[4] Defendant disputes that Webb and Hutchinson were employees of the Care Center, and thereby of the CIHA.

11

supervision cases.  [See Doc. 34 at 11-15].  She argues, instead, that N.C. Gen. Stat. § 90-171.20 (the "SAVE Act") imposes enforceable duties on nursing professionals such as those referenced in her second cause of action, and thereby provides an independent basis for her claim.  [Id.].

The SAVE Act defines the "[p]ractice of nursing by a registered nurse" as including, *inter alia*, "[t]eaching, assigning, delegating to or supervising other personnel in implementing the treatment regimen" and "[s]upervising, teaching, and evaluating those who perform or are preparing to perform nursing functions and administering nursing programs and nursing services." N.C. Gen. Stat. § 90-170.20(7).  It defines the "[p]ractice of nursing by a licensed practical nurse" as including, *inter alia*, "[a]ssigning or delegating nursing interventions to other qualified personnel under the supervision of the registered nurse" and "participating in the teaching and counseling of patients . . . [.]"  Id. at § 90-170.20(8).  However, the definitions in this statute do not amount to duties the breach of which give rise to any actionable tort. See Crider v. Cattie, 240 N.C. App. 88, 772 S.E.2d 13, at *5-*6 (2015) (unpublished table decision) ("the definition of the practice of medicine itself is not a public safety statute upon which negligence *per se* may be established . . . ."); Russell v. Adams, 125 N.C. App. 637, 640, 482 S.E.2d 30, 33 (1997) (the code of ethics pertaining to the practice of psychology

does not establish the duty of care owed by psychologists in medical malpractice actions); see also McConnell v. Servinsky Eng'g, PLLC, 22 F. Supp. 3d 610, 617 (W.D. Va. 2014) (the "law does not support the argument that statutes providing for professional standards of care give rise to an independent tort duty . . . ."). Accordingly, the SAVE Act does not provide a basis for Plaintiff's second cause of action.

Moreover, Plaintiff references the Care Center's "Administrator, Medical Director, Director of Nursing, Staff Development Coordinator, Nurse Educator, Staffing Coordinator/Nurse Scheduler, and members of the Care Center's Human Resources staff" in her second cause of action. [Doc. 1 at 15]. While she refers to these individuals as "nursing professionals" in her filings, [see Doc. 34 at 9-15], she has not identified any of these individuals nor alleged or asserted that they are registered or licensed practical nurses, as would be required to bring them within the province of the SAVE Act. See N.C. Gen. Stat. § 90-171.20(7)-(8). To the contrary, it appears that at least some of these individuals are non-nursing administrative staff, to which the SAVE Act's definitions plainly do not apply. Thus, even if the statute imposed enforceable tort duties on registered and licensed practical nurses, Plaintiff has not pled or asserted any facts establishing that the statute would apply to the individuals referenced in her second cause of action. As such, Plaintiff

13

has not demonstrated that the FTCA's private-party analogue is met regarding her claims of negligent hiring, retention, training, and supervision as set forth in the second cause of action. Accordingly, to the extent that this count purports to assert such claims, it is dismissed for lack of subject matter jurisdiction. The second cause of action shall be allowed to proceed to the extent that it alleges that the Care Center employees referred to therein failed "to provide adequate medical and personal care and maintenance to Ms. Eaton[;]" and failed "to adequately provide for the safety and wellbeing of Ms. Eaton[;]" failed "to ensure Ms. Eaton . . . was provided adequate supervision[.]" [See Doc. 1 at 19-20].

## IV. CONCLUSION

For all these reasons, North Carolina does not recognize the claims of negligent hiring, retention, training, and supervision alleged in Plaintiff's second cause of action. As a result, Plaintiff has failed to carry her burden of establishing that the FTCA provides this Court with subject matter jurisdiction over such claims. Therefore, to the extent that Plaintiff's second cause of action asserts claims for negligent hiring, retention, training, and supervision, it is dismissed.

14

Case 1:22-cv-00010-MR-WCM   Document 40   Filed 02/15/24   Page 14 of 15

**ORDER**

**IT IS, THEREFORE, ORDERED** that Defendant's Motion to Dismiss for Lack of Subject Matter Jurisdiction [Doc. 21] is **GRANTED,** and Plaintiff's Second Cause of Action, as stated in her Complaint [Doc. 1 at 15], is hereby **DISMISSED IN PART**, but only to the extent that such count is based upon claims of negligent hiring, retention, training, and supervision.

**IT IS SO ORDERED.**

Signed: February 14, 2024

Martin Reidinger
Chief United States District Judge